FILED & JUDGMENT ENTERED

Christine F. Ramsey

January  28  2026

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

_____
Benjamin A Kahn
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Applied Machinery Rentals, LLC, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Case No. 23-30461 |
| _____ | ) | |
| | ) | |
| Cole Hayes, Chapter 7 Trustee | ) | |
| for the Bankruptcy Estate of | ) | |
| Applied Machinery Rentals, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. No. 25-03073 |
| | ) | |
| Big B Crane LLC, | ) | |
| and Bruce Basden | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO
DISMISS AMENDED COMPLAINT AS TO BRUCE BASDEN**

This adversary proceeding is before the Court on Defendants'
motion to dismiss with respect to Defendant Bruce Basden.  For the
reasons stated on the record at the hearing, and for those detailed

1

herein, the Court will grant Defendants' motion to dismiss Defendant Bruce Basden.

## JURISDICTION AND AUTHORITY

The district court has jurisdiction over this proceeding under 28 U.S.C. § 1334(b).  On April 14, 2014, the district court entered its Amended Standing Order of Reference, referring all proceedings arising under title 11 and arising in or related to a case under title 11 to the bankruptcy judges for the Western District of North Carolina.  Under 28 U.S.C. § 155(a), the Honorable Albert Diaz, Chief Judge of the United States Court of Appeals for the Fourth Circuit, assigned and designated the above-signed judge to this Court and to the above-captioned case, together with all associated adversary proceedings.  Case No. 23-30461, ECF No. 489, at 3.  Thereafter, Chief Judge Laura T. Beyer entered an Order referring this case and all related proceedings to the above-signed as contemplated by the Order entered by the Honorable Albert Diaz.  Id. at 1-2.

Plaintiff alleges, and Defendants do not contest, that this matter is a statutorily core proceeding under 28 U.S.C. § 157.  ECF No. 17, ¶ 14.  The parties have consented to this Court entering final orders and judgment in this adversary proceeding.  Id. ¶ 18.  See Wellness Int'l Network, Ltd. v. Sharif, 575 U.S. 665, 678 (2015).  Venue is proper under 28 U.S.C. § 1409.

2

## PROCEDURAL BACKGROUND

Plaintiff filed the Complaint initiating this adversary proceeding on July 7, 2025, ECF No. 1, and later filed an Amended Complaint as of right under Federal Rule of Civil Procedure 15(a)(1)(B), made applicable to this adversary proceeding by Bankruptcy Rule 7015.  ECF No. 17 (the "Amended Complaint").[1] Defendants Big B Crane, LLC ("Big B") and Bruce Basden (collectively with Big B, "Defendants") timely responded by filing a Motion to Dismiss Amended Complaint and Brief in Support.  ECF Nos. 22 & 23.  Plaintiff Cole Hayes, as Chapter 7 Trustee ("Plaintiff") for the Bankruptcy Estate of Applied Machinery Rentals, LLC, ("Debtor") filed a Brief in Opposition to the Motion, ECF No. 28, to which Defendants filed the Reply Memorandum of Law in Support of Motion to Dismiss.  ECF No. 29.  On December 1, 2025, the parties filed a Joint Stipulation of Voluntary Dismissal of Plaintiff's fourth and fifth claims for relief leaving only the first through third claims.  ECF No. 30.

---

[1] Defendants filed a Motion to Dismiss the original complaint on September 8, 2025, ECF No. 10, which the Court denied as moot after Plaintiff filed the Amended Complaint.  ECF No. 17.

## FACTS[2]

### I.   Debtor's Ponzi Scheme

Debtor filed the above-captioned chapter 7 case on July 17, 2023.  Case No. 23-30461, ECF No. 1.  Prepetition, Garth Errol McGillewie Jr. was the sole member, manager, and principal of Debtor, over which he exercised complete dominion and control of its affairs and assets.  Adv. No. 25-03073, ECF No. 17 ¶ 22.  Debtor purported to be in the business of acquiring, distributing, leasing, and selling Merlo Telehandlers, but it was largely a fraud.  Id. ¶ 21.  Debtor's business model, subject to limited exceptions, was part of a fraudulent and illegal Ponzi scheme from at least 2019 until McGillewie took his own life in 2023.  Id. ¶¶ 23 & 35.

Between 2019 and 2023, McGillewie borrowed money from creditors on false pretenses and used proceeds from new investors to fund an extravagant lifestyle for his family, to enrich his friends, to pay previous investors and hide his fraud.  Id. ¶¶ 45,

---

[2] The Court has accepted the factual allegations in the Amended Complaint, ECF No. 17, and Plaintiff's Brief in Opposition, ECF No. 28, as true for purposes of determining whether the Amended Complaint states a claim under Fed. R. Civ. P. 12(b)(6), except those facts of which the Court may take judicial notice.  See Fed. R. Civ. P. 12(b)(6).  "[A] court may take judicial notice of its own records." Watkins v. Wells Fargo Bank, No. CIV.A. 3:10-1004, 2011 WL 777895, at *3 (S.D.W. Va. Feb. 28, 2011); see, e.g., Anderson v. Fed. Deposit Ins. Corp., 918 F.2d 1139, 1141 n.1 (4th Cir. 1990) (finding that a district court "should properly take judicial notice of its own records" at the motion to dismiss stage); see also Fed. R. Evid. 201(c).  "[B]oth the Supreme Court of the United States and the Fourth Circuit have found that courts may take judicial notice of items or matters in the public record, even at the 12(b)(6) stage of a proceeding." Watkins, 2011 WL 777895, at *3; see Papasan v. Allain, 478 U.S. 265, 268 n.1 (1986); Sec'y of State for Defence v. Trimble Navigation Ltd., 484 F.3d 700, 705 (4th Cir. 2007).

4

46 & 53.   To maintain the Ponzi scheme, McGillewie preserved an off-book portfolio for "friends and family."  Id. ¶ 24.   According to Stephanie Hofinga, accountant for Debtor from May 2021 to November 2022, McGillewie had sole access to Debtor's bank accounts and moved money between accounts freely.   Id. ¶ 25.   McGillewie also controlled all information related to Debtor's legitimate sales and leases, and according to Ms. Hofinga, getting information from him was "difficult to impossible."  Id.  Ms. Hofinga inquired with McGillewie about Debtor's books.  He explained that he entered loans, investments, or deals between business friends, separate from Debtor's operations and that these transactions did not involve the sale of telehandlers.  Id. ¶ 26.  Ms. Hofinga testified that those deals were part of McGillewie's separate portfolio, of which she was provided little to no information.  Id.  Ms. Hofinga created a limited spreadsheet of these questionable transactions in 2021, and Big B's name appears approximately three times on this spreadsheet.[3]  Id. ¶¶ 28 & 29; id. Ex. A.  Debtor's balance sheet listed millions in sales and receivables based on fictitious sales.  Id. ¶ 42.  These telehandlers either did not exist or they never changed hands, and the buyers had to be paid back at a premium.  Id.  As a result of these practices, and at least four years before the Petition Date, Debtor's liabilities exceeded its

---

[3] Big B is listed for a purported $900,000 purchase on November 1, 2020, and a $990,000 buyback.  Id. ¶ 32.

assets, and by the end of 2022 that amount exceeded
$123,000,000. Id. ¶¶ 43 & 52.

## II.  Debtor's Relationship with Defendants

Debtor began doing business with Big B in 2020. Basden had
a personal relationship with McGillewie, and, through Big B, made
a series of investments in Debtor to profit from the Ponzi scheme.
Id. ¶¶ 43 & 55. Big B conducted a limited amount of legitimate
business with Debtor that was handled by other employees of Big B.
Id. ¶ 56. All illegitimate business was handled by Basden and
McGillewie directly. Id. ¶ 59. McGillewie and Basden, despite
conducting sizeable business transactions, did not produce
documentation or communications regarding their transactions, id.
¶ 60, with the exception of "fraudulent invoices that purported to
sell telehandlers to Big B." Id. No such telehandlers ever
existed, they were previously sold to another party, or they
remained on Debtor's lot. Id. For example, the serial numbers
provided in the fictitious invoices between McGillewie and Basden
do not exist, and no telehandlers were ever located with the
corresponding numbers. Id.; id. Ex. C.

Between April 2020 and March 2023, Defendants engaged in a
series of individual investments with Debtor resulting in returns
of over $7.4 million of principal and profit. Id. ¶ 61. These
investments were wired to Debtor in exchange for a guarantee that
Big B would receive at least a 10% return in 45 to 60 days. Id.

¶ 64.  McGillewie prepared invoices listing Big B as the buyer of certain telehandlers, but no such deliveries ever took place, and the machines were never insured even though they were listed as assets on Big B's balance sheets.  Id. ¶¶ 68 & 70.  Further, Big B would re-rent the machines to Debtor.  Id. ¶ 71.  Big B provided Debtor invoices for monthly rent payments, which used the same fabricated addresses and often were made without even listing the machine purportedly being re-rented to Debtor by Big B.  Id. ¶¶ 71 & 73; id. Ex. E.  Defendants conducted little to no due diligence before entering each transaction with Debtor and never took reasonable steps to ensure the existence and security of their telehandlers which was collateral for their loans.  Id. ¶¶ 77 & 78.  These transactions were "short-term investments at high rates of return fraudulently papered to look like the purchase or rental of equipment."  Id. ¶ 66.  Defendants never inquired with McGillewie about why Debtor would need to borrow money from a third-party to purchase telehandlers.  Id. ¶ 83.  As a result of the investments made through Big B, it received the following transfers from Debtor.  Id. ¶ 84.

| Transfer Date | Transfer Amount |
|---|---|
| 07/09/2020 | $19,800.00 |
| 07/15/2020 | $28,809.00 |
| 09/01/2020 | $990,000.00 |
| 09/16/2020 | $19,800.00 |
| 10/27/2020 | $19,800.00 |
| 31/12/2020 | $19,800.00 |
| 03/03/2021 | $873,400.00 |
| 03/30/2021 | $19,800.00 |

| 07/08/2021 | $990,000.00 |
| 07/16/2021 | $990,000.00 |
| 10/08/2021 | $39,600.00 |
| 10/26/2021 | $39,600.00 |
| 12/31/2021 | $990,000.00 |
| 03/10/2022 | $90,000.00 |
| 04/22/2022 | $990,00.00 |
| 08/12/2022 | $132,000.00 |
| 08/26/2022 | $290,000.00 |
| 12/30/2022 | $290,000.00 |
| 03/24/2023 | $290,000.00 |
| TOTAL | $7,402,409.00 |

The transfers constituted the return of principal to Defendants
and a profit to them based on an "exorbitant" interest rate.  Id.
¶¶ 82 & 87.

**STANDARD OF REVIEW**

Defendants move to dismiss the Amended Complaint with respect
to Defendant Basden for failure to state a claim under Federal
Rule of Civil Procedure 12(b)(6), made applicable to this adversary
proceeding by Bankruptcy Rule 7012.  To survive a motion to dismiss
under Rule 12(b)(6), "a complaint must contain sufficient factual
matter, accepted as true, to 'state a claim to relief that is
plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678
(2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570
(2007)).  "A claim has facial plausibility when the plaintiff
pleads factual content that allows the court to draw the reasonable
inference that the defendant is liable for the misconduct
alleged."  Iqbal, 556 U.S. at 678.  While the plausibility
requirement is not a probability requirement, it "asks for more

than a sheer possibility that a defendant has acted unlawfully." Id.

This Court employs a two-part test to determine whether a claim should be dismissed under Rule 12(b)(6). In re Bynum, No. 12-10660, 2012 WL 2974694, at *2 (Bankr. M.D.N.C. July 20, 2012). First, the Court accepts all well-pleaded facts in the Amended Complaint as true and views the complaint in a light most favorable to the non-moving party. Mylan Laboratories, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993); see also In re Rutledge, 510 B.R. 491, 499 (Bankr. M.D.N.C. 2014) (noting that the court will "consider documents [or facts] incorporated into the Complaint by reference . . ."). Second, the Court must determine whether facts cited in support of each claim demonstrate that the plaintiff may plausibly be entitled to relief. Id.; see also In re Gause, 525 B.R. 35, 37 (Bankr. M.D.N.C. 2014) (explaining that all inferences are liberally construed in the plaintiff's favor). "In general, a motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief." Matkari, 7 F.3d at 1134.

When a plaintiff alleges fraud, Federal Rule of Civil Procedure 9(b), made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7009, requires that a party alleging fraud

"state with particularity the circumstances constituting fraud . . . ," but "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). The requirement of Rule 9(b) "is not intended to be an insurmountable hurdle for claimants to overcome; the complaint must give the party adequate notice of the charges-it need not marshal all of the evidence against him." In re Whitley, No. 12-02028, 2013 WL 486782, at *13 (Bankr. M.D.N.C. Feb. 7, 2013) (quoting In re Commercial Fin. Servs., Inc., 322 B.R. 440, 448 (Bankr. N.D. Okla. 2003)). Consistent with this principle, courts "should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which [the defendant] will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999).

## DISCUSSION

Plaintiff's first claim for relief seeks to avoid and recover the portion of the transfers made to "Defendants" within the two years prior to the petition date under §§ 548 and 550. In its second claim, Plaintiff seeks to recover all transfers from Defendants under §§ 544 and 550 as constructively or actually fraudulent under North Carolina law or South Carolina law. Plaintiff's third claim asserts an independent claim for piercing

10

the corporate veil, seeking to hold Defendants jointly and severally liable "for damages proximately caused to Plaintiff by their fraudulent conduct." ECF No. 17, ¶ 161. Defendants move to dismiss Plaintiff's first, second, and third Claims for Relief as to Basden only. ECF No. 22, at 2.

### I. Plaintiff Fails to Allege that Basden was a Transferee of Any of the Transfers Under §§ 544, 548, or 550.

Defendants move to dismiss the first and second claims as to Basden based on the absence of any allegation that Basden was a transferee of any of the transfers. ECF No. 23, at 2. Plaintiff argues that by alleging that "Defendants" received the transfers, and by detailing the relationship between Basden and McGillewie, Plaintiff has put both Basden and Big B on notice that the Trustee believes both Defendants received the transfers. ECF No. 28, at 5-6. These allegations are insufficient to state a plausible claim for recovery of transfers under the applicable sections against Basden.

"Impermissible group pleading occurs where a complaint fails to distinguish between defendants." In re Swarthmore Grp., Inc., 667 B.R. 258, 269 (Bankr. E.D. Pa. 2025) (citation omitted). Group pleading is permissible when the complaint sets forth facts that sufficiently put individual defendants on notice of the claims against them. Id.; In re Neighbors Legacy Holdings, Inc., 645 B.R. 864, 895 (Bankr. S.D. Tex. 2022) ("Group pleading is acceptable if the plaintiff 'intend[s] to allege that each

defendant committed the alleged acts' and the acts could have been committed by more than one defendant.") (alterations in original) (quoting In re Northstar Offshore Grp., LLC, 616 B.R. 695, 723 (Bankr. S.D. Tex. 2020)).

To state a claim against a transferee at the pleading stage, plaintiff does not have to provide an exact accounting of the funds at issue, Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC, 655 B.R. 149, 165 (Bankr. S.D.N.Y. 2023), but "must allege 'the necessary vital statistics –the who, when, and how much–' of the purported transfers . . . ." Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC, 594 B.R. 167, 195 (Bankr. S.D.N.Y. 2018) (citation modified). Similarly, to establish the liability of an entity for whose benefit the transfer was made, the following elements are necessary: (1) the debtor's intent to confer a benefit; (2) whether the benefit was actually received by the beneficiary; (3) whether the benefit was quantifiable; and (4) whether the benefit was accessible by the beneficiary. In re Grube, 500 B.R. 764, 777 (Bankr. C.D. Ill. 2013).

The United States Bankruptcy Court for the District of Delaware has dismissed a complaint based on similarly insufficient allegations and arguments. In In re DBSI, Inc., 445 B.R. 351 (Bankr. Del. 2011), the trustee alleged that a transfer was recoverable under § 550(a) where the individual defendant was alleged to have control over his corporation such that the

12

transfers were made for his benefit.  445 B.R. at 356.  As in this case, the complaint in DBSI did not contain any specific facts to support a benefit to the principal beyond mere conclusory statements.  Id.  Having failed to identify any transfers made to, or for the benefit of the individual defendant, the complaint failed to sufficiently allege a claim to recover fraudulent transfers from the individual defendants.  Id.

Plaintiff alleges that "Defendants" received each of the contested transfers and that he is entitled to recover each of the transfers from Defendants jointly and severally under § 550.  But the Amended Complaint is sufficiently clear that Big B was the only recipient of any transfer, and the balance of the Amended Complaint does not sufficiently allege facts demonstrating a transfer or benefit to Basden.  See, e.g., ECF No. 17 ¶ 87. Plaintiff states that "[t]his adversary proceeding seeks to recover over $7.4 million of fraudulently transferred cash to the Defendants Big B, LLC . . . and, through Big B, Bruce Basden . . . ." Id. ¶ 1 (emphasis added).  Even construing this allegation in a light favorable to Plaintiff, it states that the transfers were made to Big B.  Likewise, the complaint refers to the transfers as "[t]he transfers to Big B . . . ." Id. ¶ 2.  Indeed, Plaintiff concedes that it had no indication, absent conjecture, that Basden received any transfer from Debtor.  ECF No. 31, at 00:29:00-00:30:10.  The Amended Complaint is likewise devoid of any factual

allegation that Basden was the intended beneficiary of the transfers.   The Amended Complaint does not identify a single instance where Basden used his position to transfer any of the money received by Big B to himself.   Thus, the Amended Complaint fails to allege that Basden was a recipient of any transfer or received a benefit from any transfer, and fails to state a claim for avoidability or recovery of the transfers from Basden under §§ 544, 548, or 550.   The Court will dismiss Plaintiff's first and second claims for relief as to Basden.

## II. Plaintiff Fails to Sufficiently Allege a Basis for Piercing the Corporate Veil.

Plaintiff's third claim asserts an independent claim for piercing the corporate veil seeking to hold Defendants jointly and separately liable "for damages proximately caused to Plaintiff by their fraudulent conduct."   ECF No. 17, ¶ 161.   Defendants argue that Texas state law should control the outcome of the third claim, and that the claim should be dismissed because the Amended Complaint fails to allege sufficient grounds to pierce the corporate veil under Texas law.   ECF No. 23, at 2.   Plaintiff argues that a choice of law analysis is inappropriate at this stage of the proceeding.   ECF No. 28, at 7-9.   Plaintiff further contends that it has stated a claim for piercing the corporate veil under both Texas and North Carolina law.   Id. at 9.

### a. The Court will apply the laws of the state of Texas as to the alter ego claim.

Defendants assert that Plaintiff's alter ego claim should be addressed at this stage and analyzed under Texas law because the Amended Complaint plainly states Big B's state of incorporation. ECF No. 29, at 4; Minute Man Anchors, Inc. v. Oliver Techs., Inc., No. 1:04 CV 27, 2005 WL 1871164, at *9 (W.D.N.C. Aug. 5, 2005). Plaintiff argues that determining choice of law at the motion to dismiss stage is premature. Movement Mortgage, LLC v. McDonald, No. 3:17-CV-00716, 2018 WL 6733953, *3 (W.D.N.C. Nov. 6, 2018).

Courts often defer choice of law decisions until after completion of discovery. M.D. Russell Constr., Inc. v. Consol. Staffing, Inc., No. 22-1420, 2023 WL 8798086, at *3 (4th Cir. Dec. 20, 2023) (collecting cases); see also In re Martinez Quality Painting & Drywall, Inc., No. 22-30357, 2025 WL 828882, at *4 (Bankr. W.D.N.C. Mar. 14, 2025) ("When considering a motion to dismiss, many courts are reluctant to engage in a choice of law analysis given the potentially fact-intensive inquiry."); Clean Earth of Md., Inc. v. Total Safety, Inc., No. 2:10-cv-119, 2011 WL 1627995, at *4 (N.D. W. Va. Apr. 28, 2011) ("Importantly, a court is typically in a better position to decide a choice of law issue after the parties have developed the factual evidence through the process of discovery.") (collecting cases).  If a court defers the

choice of law analysis, it may apply the choice of law as alleged in the complaint under the Rule 12(b)(6) standard.  Id.

As a federal court sitting in North Carolina, North Carolina choice of law principles control.  Friedman v. Wellspring Cap. Mgmt., LLC, Adv. No. 19-80071-DD, 2020 WL 5083319, at *4 (Bankr. D.S.C. Aug. 27, 2020) (citing In re Merritt Dredging Co., Inc., 839 F.2d 203, 205 (4th Cir. 1988)).  North Carolina's Supreme Court has yet to prescribe what choice of law rules it would apply when addressing an alter ego claim or remedy.  Thus, this Court must predict how the North Carolina Supreme Court might rule if faced with the same question.

Plaintiff has not cited, and the Court did not find, a North Carolina Supreme Court case determining the appropriate choice of law with respect to claims seeking to pierce the corporate veil. In Minute Man Anchors, Inc., the United States District Court for the Western District of North Carolina determined that, when "faced with a choice-of-law question regarding the equitable remedy of piercing the corporate veil, the North Carolina Supreme Court would adopt the internal affairs doctrine and apply the law of the state of incorporation."  No. 1:04CV27, 2005 WL 1871164, at *9 (W.D.N.C. Aug. 5, 2005) (citing DeWitt v. Hutchins, 309 F. Supp. 2d 743, 751 (M.D.N.C. 2004)); see also Dassault Falcon Jet Corp. v. Oberflex, Inc., 909 F. Supp. 345, 349 (M.D.N.C. 1995) (determining that North Carolina would apply the internal affairs doctrine, and the law of

16

the state of incorporation controls).  In Oberflex, Inc., the court

relied on North Carolina's adoption of other portions of the

Restatement (Second) of Conflict of Laws for purposes of the sale

of goods to support the conclusion that it would also apply the

internal affairs doctrine to veil piercing claims.  Id.  The

analysis and conclusions in Minute Man and Oberflex, Inc. are

persuasive.

Although courts in the Fourth Circuit typically resist

undertaking a choice of law analysis at the motion to dismiss

stage, because the internal affairs doctrine does not require a

fact intensive inquiry to ascertain which law applies, determining

the applicable law is appropriate at this stage and for this

purpose.  Plaintiff has alleged that Big B is a member-managed

limited liability company formed and existing under the laws of

the state of Texas.  ECF No. 17, ¶ 10.  Thus, Under the internal

affairs doctrine, the law of the state of Texas applies to

Plaintiff's claim for piercing the corporate veil.

> **b. To the extent Plaintiff's claim for piercing the
> corporate veil is asserted as an independent cause of
> action, the claim is dismissed.**

Plaintiff's third claim to relief asserts that

"Defendants, [are] jointly and severally, [] liable for damages

proximately caused to Plaintiff by their fraudulent conduct."  ECF

No. 17, ¶¶ 132-166.  Thus, Plaintiff suggests that piercing the

corporate veil is a separate claim that would allow Plaintiff to

17

hold Defendants liable for damages proximately caused to Plaintiff, rather than a remedy for holding Basden and Big B jointly and separately liable for the fraudulent transfers. Id. ¶ 166. Under Texas law, alter ego suits are not separate claims for relief. Spring St. Partners-IV, L.P. v. Lam, 730 F.3d 427, 443 (5th Cir. 2013) ("Under Texas law, 'an assertion of veil piercing or corporate disregard does not create a substantive cause of action[;] . . . such theories are purely remedial and serve to expand the scope of potential sources of relief by extending to individual shareholders or other business entities what is otherwise only a corporate liability.'") (citing In re JNS Aviation, LLC, 376 B.R. 500, 521 (Bankr. N.D. Tex. 2007)).[4] At no point in the Amended Complaint does Plaintiff clarify that veil piercing is asserted as a basis of recovery on the first or second claims rather than an independent cause of action. Instead, Plaintiff contends that he can recover from Basden, or Big B, as immediate or mediate transferees. ECF No. 17, ¶ 117. Thus, to the extent Plaintiff's alter ego claim is plead as a separate cause of action, rather than a theory of recovery and remedy, it will be dismissed. See, e.g., U.S. Bank v. Verizon Communications Inc.,

---

[4] The same would be true even if Plaintiff were correct that North or South Carolina law applies. Shearson Lehman Hutton, Inc., v. Venners, 165 F.3d 912 (table), 1998 WL 761505 at *2 (4th Cir.1998) (explaining that under North Carolina law piercing the corporate veil is "a method of imposing liability on an underlying cause of action," not a separate claim for relief); Drury Dev. Corp. v. Found. Ins. Co., 380 S.C. 97, 102 (2008) (same).

892 F. Supp. 2d 805, 829 (N.D. Tex. 2012) (Summary
Judgment) (explaining that the district court "already dismissed
the plaintiff's alter ego claim, but only to the extent that it is
pled as a separate cause of action."). Even if the Court were to
construe Plaintiff's third claim for relief as a request for the
remedy of veil-piercing, it still fails.

> ### c. The Texas Business Organizations Code applies to Plaintiff's alter ego and sham to perpetuate fraud claims.

Defendants and Plaintiff dispute whether the Texas Business
Organizations Code ("TBOC"), Tex. Bus. Org. Code. § 21.223., or
Texas common law applies to Plaintiff's alter ego claim. ECF No.
28, at 9-10; ECF No. 29, at 6-7. Plaintiff asserts that Texas
common law applies, Defendants urge this Court to apply the TBOC.

Texas law recognizes two primary methods for holding
individual corporate officers personally liable where they are
acting within the scope of their employment. See Shandong Yinguang
Chem. Indus. Joint Stock Co. v. Potter, 607 F.3d 1029, 1035 (5th
Cir. 2010). First, although Texas Business and Organizations Code
§ 21.223(a) ordinarily protects members of corporations and LLCs
from liability under a theory of "alter ego of the corporation or
on the basis of actual or constructive fraud, a sham to perpetrate
a fraud, or other similar theory," see Tex. Bus. Orgs. Code §
21.223; and Spring Street Partners v. Lam, 730 F.3d 427, 443 (5th
Cir. 2013) ("Veil-piercing and 'alter ego' principles apply

19

equally to corporations and LLCs."), § 21.223 strips a principal,
or member, of his protection where he has "caused the corporation
to be used for the purpose of perpetrating and did perpetrate an
actual fraud on [an] obligee primarily for the direct personal
benefit of the holder, beneficial owner, subscriber, or
affiliate." Id. § 21.223(b). The statute pre-empts other bases
for piercing the corporate veil, but "[a]part from any veil
piercing theory seeking vicarious liability, it has long been
established that a corporations employee is personally liable for
tortious acts which he directs or participates in during his
employment." Bates Energy Oil & Gas v. Complete Oilfield Servs.,
361 F. Supp. 3d 633, 666-67 (W.D. Tex. 2019) (explaining that
common law veil-piercing and alter ego claims persist despite the
adoption of the TBOC).

These two distinct methods of holding corporate agents acting
within the scope of their employment personally liable can be
categorized as: (1) claims seeking to hold an individual liable by
piercing the corporate veil, which are governed by the TBOC; and
(2) claims asserting that the defendant is directly liable in tort.
The TBOC applies when a plaintiff asserts veil piercing theories
for claims for which the corporation is liable but in which the
individual corporate agent may, or may not, have personally
participated. Bates Energy Oil & Gas, 361 F. Supp. 3d at 666-67
(discussing the complex history of § 21.223(a)(2) and evaluating

20

the inconsistent caselaw in light of the statutes changes). Common law applies when an individual's own tortious conduct is the basis of the claim. Id. at 667, 673; see O'Connor's Texas Causes of Action Ch. 38, § F ("Vicarious liability can be imposed on a defendant for certain acts of a corporation under any one of seven theories for disregarding the corporate form, commonly referred to as 'piercing the corporate veil.'"). With this backdrop, we assess the Parties' argument.

Plaintiff urges this Court to apply the common law test used by the Fifth Circuit in Massimo Motor Sports, LLC v. Shandong Odes Indus. Co., No. 3:21-CV-2180-X, 2024 WL 1895086, at *2 n.7 (N.D. Tex. Apr. 30, 2024) (citing Century Hotels v. United States, 952 F.2d 107, 110 (5th Cir. 1992). As Defendants correctly assert, that case did not apply Texas law; instead, the test applied arose out of federal common law and the Law of the State of Louisiana. Because this Court has determined that Texas law applies when considering whether to disregard the corporate form, that case is inapposite. Century Hotels, 952 F.2d at 110 n.4. (5th Cir. 1992).

Defendants argue that TBOC controls because, at its core, Plaintiff's claims relate to business contracts and putative corporate activities, rather than sounding in tort. ECF No. 23, at 11. Plaintiff does not allege that Big B was operated as a sham entity to perpetuate fraud, or "as a mere tool or business conduit of another corporation." AHBP LLC v. Lynd Co., 649 F.

Supp. 3d 371, 386 (W.D. Tex. 2023) (citation omitted).  In fact,

Plaintiff's allegations state that some of the transactions

between Big B and Debtor were legitimate.   ECF No. 17, ¶ 56.

"Whether a plaintiff may pierce an entity's veil . . . depends on

whether the plaintiff's claims sound primarily in tort or

contract."  AHBP LLC, 649 F. Supp. 3d at 386 (citation omitted).

Defendants' cite Holland v. CryptoZoo Inc., No. 25-03073, 2025 WL

2492970, at *12 (W.D. Tex. Aug. 14, 2025), for the proposition

that the statute applies both to contract claims, and to other

matters, either tort or contract, relating to or arising from the

corporation's contractual transactions.   With respect to the

allegedly avoidable transfers,[5] the underlying transactions, even

if shams, were contractual, and the TBOC applies.  See ECF No. 17,

¶ 64 ("Big B wired funds to an account of Debtor in exchange for

a guarantee that it would typically get at least a 10% return in

45 to 60 days."); id. ¶ 59; ECF No. 23, at 11; Tex. Bus. Orgs.

Code § 21.224 ("for an obligation that is limited by Section

21.223 [the statute] is exclusive and preempts any other liability

imposed for the obligation under common law or otherwise").

Section 21.223(a)(2) applies not only to contract claims, but also

---

[5] The Amended Complaint previously contained claims against Basden based in tort
for aiding and abetting breach of fiduciary duty and aiding and abetting
corporate waste.  Those claims have been dismissed, ECF No. 30, but to the
extent Basden were directly liable in tort, any such claims would not have
required piercing the corporate veil and therefore likely would have been
subject to Texas common law.  Bates, 361 F. Supp. 3d 672-73.

22

to "any matter relating to or arising from the [contractual] obligation." Tex. Bus. Org. Code. § 21.223(a)(2). This language indicates that the statute "applies to claims holding a shareholder or owner liable for a contract-related corporate obligation (both contract and tort) . . . ." Bates Energy, 361 F. Supp. 3d at 673 (emphasis omitted). Plaintiff counters that the Amended Complaint does not allege business contracts; instead, Plaintiff alleges "a disturbing paucity of documentation and communication related to the Transfers," and that this documentation fails to support the application of the TBOC. ECF No. 28, at 10. Even assuming these contracts were fraudulent or involved deceit on part of Defendants, as alleged in the Amended Complaint, the transfers were based on putative contractual obligations, and the Court will apply the TBOC.[6]

---

[6] The complaint also fails to state a claim for piercing the corporate veil under the common law. At common law, courts:

> [D]isregard the corporate fiction, even though corporate formalities have been observed and corporate and individual property have been kept separately, when the corporate form has been used as part of a basically unfair device to achieve an inequitable result. Specifically, we disregard the corporate fiction:
>
> (1) when the fiction is used as a means of perpetrating fraud;
>
> (2) where a corporation is organized and operated as a mere tool or business conduit of another corporation;
>
> (3) where the corporate fiction is resorted to as a means of evading an existing legal obligation;
>
> (4) where the corporate fiction is employed to achieve or perpetrate monopoly;

### III. **The Amended Complaint Fails to Assert Sufficient Facts to Support Piercing the Corporate Veil under the Texas Business Organization Code.**

As explained above, where "the obligee demonstrates that the . . . beneficial owner . . . caused the corporation to be used for the purpose of perpetrating and did perpetrate an actual fraud on the obligee primarily for the direct personal benefit of the . . . beneficial owner," veil piercing is appropriate. <u>Belliveau v. Barco, Inc.</u>, 987 F.3d 122, 128 (5th Cir. 2021) (emphasis omitted). The statute provides three potential avenues for veil-piercing: "(1) the corporation is the alter ego of its owners and/or shareholders; (2) the corporation is used for illegal purposes; and (3) the corporation is used as a sham to perpetrate a fraud." <u>AHBP</u>, 649 F. Supp. 3d at 385 (quoting <u>W. Horizontal Drilling, Inc. v. Jonnet Energy Corp.</u>, 11 F.3d 65, 67 (5th Cir. 1994). Even then, the plaintiff must show that the violation was for the benefit of the individual defendant.  "And so, to except a corporate officer from that general shield—under Section 21.223(b)—regardless of avenue, a plaintiff must demonstrate the corporate officer (1)

---

(5) where the corporate fiction is used to circumvent a statute; and

(6) where the corporate fiction is relied upon as a protection of crime or to justify wrong.

<u>Castleberry v. Branscum</u>, 721 S.W.2d 270, 271-72 (Tex. 1986).  The only basis relevant here is (1) which is reflective of "a shame to perpetrate a fraud." <u>See</u> <u>id.</u> at 272 n.2.  The Amended Complaint fails to sufficiently allege that Big B was a sham corporation used as a means of perpetrating fraud.

24

perpetrated an actual fraud (2) primarily for the officer's personal benefit." CryptoZoo Inc., 2025 WL 2492970, at *11 (quoting In re Ritz, 832 F.3d 560, 566 (5th Cir. 2016); see also AHBP, 649 F.Supp.3d at 386 (quoting Tex. Bus. Orgs. Code § 21.223(b) for the proposition that "the contract claimant must show that the 'holder, beneficial owner, subscriber, or affiliate caused the corporation to be used for the purpose of perpetrating and did perpetrate an actual fraud on the obligee primarily for the direct personal benefit of the holder, beneficial owner, subscriber, or affiliate'").

The Court does not need to consider whether the Amended Complaint sufficiently states a claim for actual fraud because the factual allegations are insufficient to plausibly state a claim that Basden received a benefit. Under this second requirement, any benefit derived must be alleged to be one that is both direct and personal to the individual who plaintiff seeks liability from. Tex. Bus. Orgs. Code § 21.223(b). Direct personal benefit is not defined in the statute, but cases "in which the direct personal benefit showing has been met, [included allegations that] showed that funds derived from the corporation's allegedly fraudulent conduct were pocketed by or diverted to the individual defendant." Hong v. Havey, 551 S.W.3d 875, 885 (Tex. Ct. App. 2018) (collecting cases). Because the Amended Complaint fails to allege facts

supporting a direct, personal benefit to Basden, the Court will dismiss Plaintiff's claim.

Plaintiff alleges that the Amended Complaint sufficiently states a benefit to Basden because it "describes in great detail Big B's receipt of fraudulent transfers for the direct personal benefit of Basden, who 'siphoned funds from Big B that he then invested with [Debtor] through [McGillewie].'" ECF No. 28 (quoting ECF No. 17, ¶ 144). Further, Plaintiff alleged that Basden facilitated Big B's investments with Debtor so that Big B took the risk of loss for Basden's investment decision. ECF No. 28, at 12. Even if these allegations were not conclusory, the Amended Complaint lacks the factual allegations from which the Court reasonably could make an inference that Basden directly received any benefit. See CryptoZoo Inc, 2025 WL 2492970, at *12 (declining to pierce the corporate veil where there was no indication in the complaint that defendant actually received the transfers). Instead, these allegations merely explain that Basden was the principal of Big B, and that Big B invested funds at risk with Debtor through McGillewie. To succeed, Plaintiff was required to allege that the money was then diverted to Basden personally. Because the Amended Complaint fails to do so, Plaintiff has failed to plausibly allege alter ego, or sham to perpetuate fraud, and cannot plausibly pierce the corporate veil under Texas Law.

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED
that Defendants' motion to dismiss claims against Basden is
granted.

[END OF DOCUMENT]

**SO ORDERED**.

This Order has been signed
electronically. The Judge's
signature and Court's seal
appear at the top of the Order.

United States Bankruptcy Court